UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LINDSEY A. KIDD,

      Plaintiff,

  -against-

THOMSON REUTERS CORPORATION,

      Defendant.

Civ. No. 16-1668

**CLASS COMPLAINT**

**(Trial by Jury Demanded)**

---

On behalf of herself and all others similarly situated, Plaintiff Lindsey A. Kidd ("Plaintiff" or "Mrs. Kidd"), by and through her attorneys, Law Office Of Adam G. Singer, PLLC and Francis & Mailman, P.C., respectfully alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action based upon Defendant Thomson Reuters' ("Thomson Reuters") widespread violation of and intentional non-compliance with the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA").  Among other things, Defendant sells a product called a "National Comprehensive Report" to a variety of end users, including to employers for pre-employment screening.  The National Comprehensive Reports assist employers in evaluating the credit and criminal background history of candidates for employment or promotion, verify the identity of the candidate, and check any professional and recreational licenses obtained by the candidate.  Given Defendant's sale of background reports to employers, and the purposes for which information is gathered and expected to be used, Defendant is squarely regulated by the FCRA.  However, despite the fact that sellers of similar reports accept that they are covered by the FCRA, Defendant ignores the FCRA as it has made a

unilateral decision that it is simply not governed by the FCRA as a matter of law.  As a result, Defendant deprives American consumers of the many rights afforded to them by the FCRA, including the right to obtain free of charge a copy of the reports that Defendant sells about a consumer, the right to dispute inaccurate information the Defendant is reporting, and the right to require that the Defendant only report information that adheres to the standard of maximum possible accuracy. Additionally, Defendant's conduct negatively impacts commerce by improperly gaining a competitive edge over those companies which do comply with the law.

## PARTIES

2. Plaintiff Lindsey Kidd is an adult individual residing in Lawrenceville, Georgia, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

3. Defendant Thomson Reuters is a "person" and "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(b) and a(f), respectively.  Defendant is authorized to do business in the State of New York, has substantial contacts in this District, and is headquartered at 3 Times Square, New York, NY 10036.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

A. **DEFENDANT'S PRACTICES AS A CONSUMER REPORTING AGENCY**

6. Defendant sells a nationwide product called a National Comprehensive Report ("NCR") through its CLEAR online investigation software to employers for pre-employment screening.

7. An NCR report contains substantial information about an American consumer that Defendant has assembled, compiled and evaluated, including where the consumer resides, the consumer's age, social security number and date of birth, whether the consumer has filed for bankruptcy, has any liens, civil judgments, or criminal arrests or convictions, public records, professional licenses, recreational permits, and general information about the consumer.

8. As represented by Defendant, CLEAR delivers "the most comprehensive and current data available online," *see* http://legalsolutions.thomsonreuters.com/law-products/solutions/batch-services, and user reviews include: "On nearly my first use of CLEAR, after already conducting a search on one of your rivals, it was discovered the subject of the search had a federal felony criminal history. No indication of this in the prior inquiries." *See* http://info.legalsolutions.thomsonreuters.com/ everyday-heroes/#.

9. The information contained within a NCR report is derived from electronic data and files that Defendant maintains in its usual course of business as well as from third parties and outside sources that Defendant contacts at the time of a customer's request which does not reside in Defendant's files. Some of the data that Defendant sells through CLEAR on its NCR reports derives from data that Defendant has purchased from other consumer reporting agencies and third party data brokers which it resells through an NCR report.

10. The data contained on NCR reports is collected and expected to be used to evaluate consumers' eligibility for credit, insurance, and employment.

11. The NCR report for Mrs. Kidd was in fact used for employment purposes.

12. By selling such NCR reports containing information with the anticipated or expected use of evaluating candidates for employment or promotion as described above, Defendant operates as a "consumer reporting agency" ("CRA"), "that compile[s] and maintain[s]

files on consumers on a nationwide basis," and a national specialty consumer reporting agency ("NSCRA") as defined by 15 U.S.C. §§ 1681a(f), a(p) and a(w), respectively.

13. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs and NSCRAs.

14. Despite the fact that Defendant assembles and compiles consumer information for sale in the form of NCR reports to employers on a national basis, Defendant does not maintain a toll-free telephone number available to consumers for these purposes, does not investigate any consumer disputes in further violation of the FCRA, and does not maintain reasonable procedures to assure accuracy regarding the information contained within the NCR reports.

15. Although NCR reports often include public record information that is not complete and up to date, Defendant fails to provide notice to the consumer at the time it sells an NCR report containing public record information to an employer.

16. Furthermore, Defendant will not provide consumers with a disclosure of all of the information in its files that pertains to the consumer or the sources of this information upon request as required by the FCRA.

17. Once every twelve (12) months, a consumer is entitled to request and receive from a CRA a "free annual disclosure," which shall consist of "all information in the consumer's file at the time of the request." 15 U.S.C. §§ 1681g(a) and 1681j(a)(1)(C).

18. Despite this clear and unambiguous statutory requirement, Defendant does not provide consumers with a "free annual disclosure" as required by the FCRA.

19. Defendant's practice not only violates the FCRA as a matter of law, it exacts serious consequences on consumers and interstate commerce.

20.     Despite its duty to provide consumers with a free annual report, Defendant fails to do so, in violation of the FCRA. Defendant willfully violates the FCRA by making misrepresentations to convince consumers who contact them that they do not sell consumer reports and are not governed or regulated by the FCRA as a CRA or in any other respect.

### B. THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFF LINDSEY A. KIDD

21.     In or around October 2014, Mrs. Kidd applied for employment with the Georgia Department of Public Health ("Ga. DPH") to work as an Immunization Program Consultant in Gainesville, Georgia.

22.     Mrs. Kidd was immediately offered an interview, and interviewed for the position on or around October 15, 2014.

23.     On or about November 4, 2014, Mrs. Kidd was informed that she was the selected candidate for the Program Consultant position.

24.     On or about November 7, 2014, she returned her signed Fair Credit Reporting Act Disclosure and Authorization and Authorization to Conduct Criminal History and Background Check forms to the Ga. DPH.

25.     Upon information and belief, on or about November 10, 2014, Ga. DPH requested a background check for Mrs. Kidd from Defendant.

26.     Thomason Reuters prepared and delivered the NCR background report concerning Mrs. Kidd to the Ga. DPH on November 10, 2014 which included adverse, inaccurate public record information including a December 6, 2007 divorce filing in Newport News, Virginia between a "Lindsay A. Kidd" and a "Keith Kidd," as well as two criminal charges in Baltimore, Maryland for "Cred[it] Card: Steal Another's" and "Cred[it] Card [Imp]ersonat[ing]" from October 25, 2008 relating to a "Lindsay Elizabeth Kidd." This information is clearly

erroneous because Mrs. Kidd's first name is spelled "Lindsey," not "Lindsay," she did not use the married name of Kidd at the time of the arrest(s) because she was not married to her husband until late 2011, and she has never visited Baltimore in her life or ever used the name "Lindsay Elizabeth Kidd." The NCR report also erroneously stated that her registered public nurse license expired in 2013 when in fact it is still an active license, renewed bi-annually.

27. Over the next five weeks, Mrs. Kidd repeatedly followed up with the Ga. DPH HR department regarding the Program Consultant position and the status of her background check, as well as the current status of her nursing degree.

28. On or about December 15, 2014, the Ga. DPH HR department called Mrs. Kidd to confirm that it had received confirming proof of her nursing degree and that it would take a few days for the Office of the Inspector General to release the background check it had obtained about her.

29. On or about December 16, 2014, Mrs. Kidd received a call from the HR department informing that her background report contained a criminal record. Mrs. Kidd stated that she had no criminal record and asked for a copy of the NCR report. The HR department provided her with case number 03-K-09-003998 and stated the case was in the Baltimore, Maryland Circuit Court, but the HR department told her they could not provide her with a copy of the NCR report.

30. Mrs. Kidd attempted to follow up with the HR department later that day and renewed her request for a copy of the background report, as well as the name and contact information for the people who provided HR with the information in the report so that she could follow-up with them directly.

31.     On December 17, 2014, the HR department emailed Mrs. Kidd stating that to obtain a copy of the NCR report, she was required to submit a request in writing that would then be forwarded to the Georgia Office of the Inspector General for processing.  The HR department also confirmed that Mrs. Kidd had a five-day deadline to provide documentation to clarify the information they received, or the Ga. DPH would rescind its offer of employment.

32.     On December 17, 2014, two representatives of the Ga. DPH HR department called Mrs. Kidd and advised her that the Ga. GPH was rescinding its offer of employment.

33.     On December 22, 2014, Mrs. Kidd spoke to a representative of the State of Georgia compliance department who advised Mrs. Kidd that she should have received the name and contact information for the agency which reported the criminal record information about her and should have been provided with a copy of her rights under the FCRA before any negative action was taken.  The representative advised that Mrs. Kidd would need to directly follow-up with the actual HR department that made her the offer of employment to find out who the consumer reporting agency is because she was not privy to that information.

34.     In January and February 2016, Mrs. Kidd made multiple requests to the Ga. DPH for a copy of the background report it received about her.

35.     Mrs. Kidd was unable to procure a copy of the background report and was forced to retain an attorney in Georgia to attempt to retain it.

36.     In early March 2015, with a cover letter dated February 26, 2015 from the Ga. DPH  to her Georgia attorney, Mrs. Kidd finally received a copy of the inaccurate and derogatory NCR report in question which was used in connection with her employment application – nearly four months after the employer received the NCR report, and over three months after it took adverse action and rescinded the offer of employment.

37.     Thomson Reuters has been reporting, and did here report, derogatory, incomplete, inaccurate and mixed identification statements and information purportedly relating to Mrs. Kidd and Mrs. Kidd's purported criminal background history, professional license history, and marital status to third parties (the "inaccurate information").

38.     Thomson Reuters knew or should have known that its NCR reports are used by its customers such as the Ga. DPH for employment eligibility purposes, including but not limited to Mrs. Kidd's application for employment.

39.     The inaccurate information includes, but is not limited to, a Virginia divorce belonging to a "Lindsay A. Kidd," from four years before she was married, criminal charges belonging to a "Lindsay Elizabeth Kidd" from 2008 when she was still "Lindsey Elizabeth Ashton," and an allegedly expired registered public nurse license that was then current and is in fact still current and active in her name.

40.     Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it reported about Mrs. Kidd.  Had Thomson Reuters followed such procedures, it never would have sold the Ga. DPH an incomplete and misleading report on Mrs. Kidd, as for example, verifying the correct spelling for her first name would have enabled Thomson Reuters to create and furnish a complete report.  Notably, the report provides seven (7) "Possible AKAs" for Mrs. Kidd, none of which include her accurately spelled first name "Lindsay" attached with any of the inaccurate public record information.

41.     On or about March 9, 2015, Mrs. Kidd called Thomson Reuters CLEAR at 1-877-242-1229 to dispute inaccurate criminal record information it reported on her NCR report as it already cost her one job opportunity.  The Thomson Reuters representative advised that she

would need to email westlaw.privacypolicy@thomsonreuters.com to dispute incorrect information on her background report.

42.     On March 9, 2015, Mrs. Kidd emailed Thomson Reuters to dispute the inaccurate public record information on her background report.  Upon information and belief, Thomson Reuters did not reinvestigate the completeness and/or accuracy of its reporting about Mrs. Kidd or provide Mrs. Kidd with any results of such reinvestigation.

43.     On March 11, 2015, Mrs. Kidd contacted Thomson Reuters again and requested that it provide her with a complete copy of her file.  Defendant has not responded to Mrs. Kidd's request in any manner and to date has not provided her with a copy of her full consumer file.

44.     Due to Defendant's policy of not accepting disputes or allowing corrections, Mrs. Kidd was left without a means to have Defendant cease reporting inaccurate information about her.

45.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

46.     At all times pertinent hereto, Defendant's conduct, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless and in grossly negligent disregard for federal laws and the Plaintiff's rights.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

48.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

a. **Accuracy Class:** All natural persons about whom Defendant sold a NCR report containing one or more items of public record information for which the reported record did not match the name, full date of birth, or social security number of the consumer to whom the NCR report related, within five years prior to the filing of this Complaint.

b. **Notification Class:** All natural persons about whom Defendant sold a NCR consumer report containing one or more items of public record information for employment purposes within five years prior to the filing of this Complaint.

c. **Disclosure Class:** All natural persons to whom, beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, Defendant failed to provide a disclosure of all information it compiled and maintained about them, including the sources of that information, upon request.

d. **Failure to Reinvestigate Class:** All natural persons who, beginning five years prior to the filing of this Complaint and continuing through the resolution of this action, submitted a dispute to Defendant regarding information on a NCR consumer report, and excluding any consumer to whom Defendant sent a response with the results of its reinvestigation of the consumer's dispute.

49. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

50. **Numerosity**. FED. R. CIV. P. 23(a)(1). The Class members are so numerous that

joinder of all is impractical. Although the precise number of Class members is known only to TR, Plaintiff avers upon information and belief that the Classes number in the hundreds, if not thousands, and the names and addresses of the Class members are identifiable through documents maintained by TR.

51. **Existence and Predominance of Common Questions of Law and Fact**. FED. R. CIV. P. 23(a)(2). Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

    **a.**    Whether Defendant willfully and negligently violated the FCRA by failing to provide consumers with their full consumer file disclosures and rights under the FCRA upon request;

    **b.**    Whether Defendant willfully and negligently violated the FCRA by failing to notify consumers that it is reporting public record information which may adversely affect their employment opportunities, as well as the person to which such information is reported, at the time such information is reported to users as required under the FCRA;

    **c.**    Whether Defendant willfully and negligently violated the FCRA by refusing to investigate disputes from consumers; and

    **d.**    Whether Defendant willfully and negligently violated the FCRA by failing to employ reasonable procedures to assure the maximum possible accuracy of the consumer reports it sold.

52. **Typicality**. FED. R. CIV. P. 23(a)(3). Plaintiff's claims are typical of the claims of each Class member which all arise from the same operative facts and are based on the same legal theories. Defendant lacks strict procedures to assure maximum possible accuracy in its

reports, fails to identify the source(s) of information it reports about consumers, refuses to investigate disputes it receives from consumers regarding erroneous information it reports to employers and potential employers, and fails to provide consumers with a copy of their full consumer file disclosures upon request. Plaintiff has the same claims for statutory, actual and punitive damages that she seeks for absent class members.

53. **Adequacy**. FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent. She has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the Class.

54. **Predominance and Superiority**. FED. R. CIV. P. 23(b)(3). Questions of law and fact common to the Class members predominate over questions affecting only individual Class members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. TR's conduct described in this Complaint stems from common and uniform practices, resulting in common violations of the FCRA. Members of the Classes do not have an interest in pursuing separate actions against TR, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution. Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning TR's practices. Moreover, management of this action as a class action will not likely present any difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum.

55. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members who are not parties to the adjudications or substantially impair or impede their ability to protect their interests.

## CAUSES OF ACTION

### COUNT I
### (Accuracy Class)

56. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

57. Defendant failed to comply with 15 U.S.C. § 1681e(b) by failing to assure maximum possible accuracy of its reports.

58. Pursuant to 15 U.S.C. §§ 1681n & o, Thomson Reuters is liable to Plaintiff and all Class members for its failure to comply with FCRA Section 1681e(b), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

### COUNT II
### (Notification Class)

59. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

60. Defendant failed to comply with 15 U.S.C. § 1681k(a) by failing to either:

    a. notify the consumer of the fact that public record information which is likely to have an adverse effect upon a consumer's ability to obtain employment is being reported to a user for employment purposes, along with the name and address of the person to whom such information is being reported, pursuant to 15 U.S.C. § 1681k(a)(1), or

    b. maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported, it is complete and up to date, pursuant to 15 U.S.C. § 1681k(a)(2).

61. Pursuant to 15 U.S.C. §§ 1681n & o, Thomson Reuters is liable to Plaintiff and all Class members for its failure to comply with FCRA Sections 1681k(a)(1) and/or 1681k(a)(2), in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

### COUNT III
### (Disclosure Class)

62. Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

63. Defendant failed to comply with 15 U.S.C. § 1681g by failing to provide all information in the consumer's file at the time of a request, including the sources of the information and identification of each person that procured a consumer report for employment or other purposes, among other information.

64.     Pursuant to 15 U.S.C. §§ 1681n & o, Thomson Reuters is liable to Plaintiff and all Class members for its failure to comply with FCRA Section 1681g, in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## COUNT IV
### (Failure to Reinvestigate Class)

65.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

66.     Defendant failed to comply with 15 U.S.C. § 1681i by failing to investigate and/or reinvestigate disputes it receives from consumers.

67.     Pursuant to 15 U.S.C. §§ 1681n & o, Thomson Reuters is liable to Plaintiff and all Class members for its failure to comply with FCRA Section 1681i, in an amount equal to the sum of (1) damages of not less than $100 and not more than $1,000 per violation; (2) actual damages; (3) punitive damages in an amount to be determined by the jury; (4) attorney's fees; and (5) litigation costs, as well as such further relief as may be permitted by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

**A.**     An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

**B.**     An award of statutory, actual and punitive damages for Plaintiff and the Classes;

**C.**     An award of pre-judgment and post-judgment interest as provided by law;

**D.**     An award of attorneys' fees and costs; and,

**E.** Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

Dated: March 3, 2016

                                      Respectfully submitted,

BY:    /s/ *Adam G. Singer*
        ADAM G. SINGER
        **LAW OFFICE OF ADAM G. SINGER, PLLC**
        60 E. 42nd Street, Suite 4600
        New York, NY 10165
        T: 212.842.2428
        F: (212) 658 – 9682
        E: asinger2@alumni.law.upenn.edu
        Attorney Bar # AS7294

        **FRANCIS & MAILMAN, P.C.**
        JAMES A. FRANCIS (*pro hac vice forthcoming*)
        JOHN SOUMILAS (*pro hac vice forthcoming*)
        Land Title Building, 19th Floor
        100 South Broad Street
        Philadelphia, PA 19110
        T: 215.735.8600
        F: 215.940.8000
        E: jfrancis@consumerlawfirm.com
        E: jsoumilas@consumerlawfirm.com

        *Attorneys for Plaintiff*