**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LINDSEY A. KIDD | Civ. No. 1:16-cv-01668-JMF |
| Plaintiff, | |
| v. | |
| THOMSON REUTERS CORPORATION, | **ECF Case** |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO EXCLUDE EXPERT REPORT AND TESTIMONY OF BRIAN H. KLEINER

**COVINGTON & BURLING LLP**
The New York Times Building
620 Eighth Avenue
New York, NY 10018

*Attorneys for Defendant*
*Thomson Reuters Corporation*

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE CASE ................................................................ 1

I.  MR. KLEINER IS NOT QUALIFIED TO OPINE ON THE FAIR
    CREDIT REPORTING ACT. .......................................................... 3

II. MR. KLEINER'S OPINIONS ARE NOT RELEVANT OR
    RELIABLE. ................................................................................... 8

    A.  Mr. Kleiner's First Opinion Merely States a Fact and is Neither
        Relevant or Reliable. ............................................................ 10

    B.  Mr. Kleiner's Second Opinion Lacks a Reliable Foundation and
        Speculates on Issues Not Relevant to this Litigation. ......................... 12

    C.  Mr. Kleiner's Third Opinion Contradicts Record Evidence, Has
        No Factual Basis, and Lacks Relevance. ............................................ 14

CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002) ........................................................................9, 15

*Broadspring, Inc. v. Congoo, LLC*,
   2014 WL 4100615 (S.D.N.Y. Mar. 1, 2013) ........................................................2

*Brown v. West Corp.*,
   2014 WL 1757576 (D. Neb. May 1, 2014) ...........................................................7

*Carmichael v. Raytheon Co.*,
   CV 09-3089 (C.D. Cal. Nov. 4, 2010) ...................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) ...............................................................................2, 9, 15

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009) ...................................................................2

*General Elec Co. v. Joiner*,
   522 U.S. 136 (1997) ................................................................................................2

*Holly D. v. Cal. Inst. of Tech.*,
   339 F.3d 1158 (9th Cir. 2003) ...............................................................................8

*Israel v. Spring Indus., Inc.*,
   2006 WL 3196956 (E.D.N.Y. Nov. 3, 2006) ......................................................14

*Koppell v. New York State Bd. of Elections*,
   97 F. Supp. 2d 477 (S.D.N.Y. 2000) ....................................................................9

*Marting v. Crawford & Co.*,
   2004 WL 305724 (N.D. Ill. Jan. 9, 2004) ............................................................8

*Rieger v. Orlor, Inc.*
   427 F. Supp. 2d 99, 104 (D. Conn. 2006) .............................................................7

*S.E.C. v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) ...................................................................3

*Wagner v. ABW Legacy Corp., Inc.*,
　2016 WL 880371 (D. Ariz. Mar. 8, 2016)............................................................8

**Rules and Statutes**

Fed. R. Evid. 104(a) ...................................................................................................3

Fed. R. Evid. 702 ..............................................................................................3, 9, 15

Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ......................................*passim*

**Other Authorities**

Cynthia D. Fisher, et al., *Human Resource Management* 348-49 (6th
　ed. 2006) ..........................................................................................................12

## STATEMENT OF THE CASE

In her opposition to Thomson Reuters's motion for summary judgment, Plaintiff relies on the purported expert testimony of Brian Kleiner.  Mr. Kleiner is a professor of human resources management at California State University, Fullerton and also serves as a consultant to businesses and as an expert witness—most frequently on wrongful termination and employment discrimination issues.

Mr. Kleiner plainly is not qualified to offer an opinion on the only issues presented in the summary judgment motion—whether Thomson Reuters is a "consumer reporting agency" and whether its CLEAR product is a "consumer report" within the meaning of the Fair Credit Reporting Act ("FCRA").  Mr. Kleiner has no expertise in—and only limited familiarity with—FCRA:  He has never studied FCRA; he has never taught courses or classes involving FCRA; he has never consulted on FCRA; and, unsurprisingly given this absence of training or experience, he has never before testified on FCRA.

Even if Mr. Kleiner were deemed to be qualified, the opinions he seeks to offer are unreliable and irrelevant to the threshold questions presented in Thomson Reuters's summary judgment motion because those questions turn on the subjective intent and business practices of Thomson Reuters itself—not on the conjecture of a professor who has no experience with the operations and practices of information providers such as Thomson Reuters and who had never even heard

of the product at issue before this case.  Mr. Kleiner's opinions are unmoored from the facts that bear on this Court's analysis of the threshold FCRA questions and in fact contradict the record evidence; they are, by his own admission, "guess[es]." *See* Deposition of Brian Kleiner at 111:6-11.[1]

## ARGUMENT

The district court plays a "gatekeeping role" with respect to expert testimony and should "admit expert testimony only where it is offered by a qualified expert and is relevant and reliable." *Broadspring, Inc. v. Congoo, LLC*, No. 13-CV-1866 (JMF), 2014 WL 4100615, at *15 (S.D.N.Y. Aug. 20, 2014) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993) (internal quotation marks omitted)).  "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Consistent with this guidance, expert testimony should be excluded if it "simply addresses lay matters which the jury is capable of understanding and deciding without the expert's help." *In re Fosamax Prods.*

---

[1] The transcript of Mr. Kleiner's deposition is attached as Exhibit A to the accompanying Declaration of Neil K. Roman ("Roman Decl."); his expert report is Exhibit B to the Roman Declaration.

*Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).

## I.    MR. KLEINER IS NOT QUALIFIED TO OPINE ON THE FAIR CREDIT REPORTING ACT.

"A court's inquiry into a proposed expert's qualifications is a threshold question conducted under Rule 104(a) of the Federal Rules of Evidence—one that seeks to determine whether the proposed expert is, in fact, an expert in the area in which he or she intends to testify." *S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013).  A proffered expert must be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.

By no measure is Mr. Kleiner qualified by his "knowledge, skill, experience, training, or education" to testify on FCRA-related issues.  To the contrary, Mr. Kleiner, a professional witness who earns more from testifying than he does in his position as a professor, Kleiner Dep. at 28:14-22, lists in his professional biographies at least 40 areas in which he professes expertise—not one of which is FCRA.[2]

Nor could Mr. Kleiner claim expertise in FCRA:

---

[2] *See, e.g.*, Kleiner Dep. Exh. Nos. 4 (listing 12 areas of expertise), 5 (ten areas of expertise), 6 (27 areas of expertise), 7 (40 areas of expertise), 8 (11 areas of expertise), 9 (ten areas of expertise), 10 (23 areas of expertise), and 11 (12 areas of expertise).  These exhibits are attached as Exhibit D to the Roman Declaration.

- Mr. Kleiner has never taken any courses on or received training in FCRA issues, Kleiner Dep. at 56:15-18;

- Mr. Kleiner has never in his more than 30 years as a professor taught a course or even given a lecture on issues involving or arising out of FCRA, *id.* at 55:13-16;

- Mr. Kleiner has never in the course of his robust consulting practice advised companies on FCRA issues, *id.* at 56:11-14;[3]

- Not one of Mr. Kleiner's more than 500 articles and other publications is about FCRA, *id.* at 55:1-5;

- Never in the more than 60 times Mr. Kleiner has testified at trial or in the more than 225 times he has testified at deposition has he addressed issues involving or arising out of FCRA, *id.* at 12:5-10 & 52:17-53:10; and

- In none of the at least eight profiles Mr. Kleiner has placed on websites on which expert witnesses advertise their availability is FCRA even mentioned (let alone claimed as a subject of expertise), *id.* at 22:8-27:1, 47:22-49:18 & 52:9-53:2 and Dep. Exh Nos. 4-11.

This lack of knowledge of and experience with FCRA makes Plaintiff's reliance on Mr. Kleiner all the more puzzling given that Phase I of this case concerns only "the issue of whether Defendant Thomson Reuters Corporation (or a substituted legal entity) is a consumer reporting agency within the definition set forth in the Fair Credit Reporting Act, and whether reports labeled as National Comprehensive Reports are consumer reports as defined in the statute." Doc. 27 (Letter from John Soumilas, counsel for plaintiff, to the Court (Aug. 5, 2016)). A

---

[3] Mr. Kleiner's vitae is Exhibit C to the Roman Declaration.

"consumer reporting agency" (or "CRA") is an entity that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of preparing or furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). A "consumer report" is a communication issued by a "consumer reporting agency," bearing on a consumer's credit worthiness, reputation, or character, which is used or expected to be used as a factor in establishing eligibility for credit, employment, or other authorized purposes. *Id.* § 1681a(d)(1). Plaintiff acknowledges that the definitions of "consumer reporting agency" and "consumer report" are co-dependent. Pl.'s Mem. Law Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. (Doc. 56), at 12.

Mr. Kleiner, however, does not even offer an opinion as to whether Thomson Reuters "regularly engages in whole or in part" in assembling or evaluating consumer credit information or other information on consumers. Instead, he offers only the most general—and unhelpful—observations about Thomson Reuters, such as that it "seems to be, as far as I can determine, large." Kleiner Dep. at 58:5-6. That lack of knowledge is hardly surprising given that Mr. Kleiner was not familiar with the CLEAR product before the case and has never used CLEAR. *Id.* at 59:1-5. Mr. Kleiner simply is not in a position to assist the Court in determining whether Thomson Reuters "regularly engages" in assembling or evaluating consumer credit information: Although Plaintiff acknowledges that

"[t]he key question of whether a company is a CRA, as the FTC LeBlanc advisory opinion points out, is the *activities* of that business," Pl.'s Mem. Law Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. (Doc. 56), at 15 (emphasis in original), Mr. Kleiner claims no knowledge of, and offers no opinion on, the *activities* of Thomson Reuters. *See* Kleiner Dep. at 58:4-14; 59:1-5; 62:21-63:7.

Mr. Kleiner likewise can shed no light on whether Thomson Reuters assembles or evaluates information with "the purpose of furnishing consumer reports to third parties." This question requires examining the subjective intent of the entity allegedly providing consumer reports within the meaning of FCRA—here, Thomson Reuters. Mr. Kleiner, however, has not offered—and cannot offer—an opinion bearing on this issue or offered facts or analysis that would provide insight into Thomson Reuters's intent. To the contrary, when presented with Thomson Reuters's marketing materials, Mr. Kleiner acknowledged that CLEAR reports are used by customers for such non-FCRA purposes as child support collection, corporate due diligence, law enforcement, insurance and fraud investigation, and person and asset location. Kleiner Dep. at 96:24-99:12 & Exh. Nos. 26-37.[4] Unsurprisingly, Mr. Kleiner does not point to evidence suggesting that Thomson Reuters assembles information with "the purpose of furnishing consumer reports to third parties."

---

[4] The marketing materials are Exhibit E to the Roman Declaration.

Thomson Reuters takes no position as to whether Mr. Kleiner is qualified on topics not the subject of this litigation, and other courts have allowed his testimony on human resources topics such as wrongful termination and employment discrimination.  But that is not what this case is about.

Courts have not hesitated to exclude Mr. Kleiner's reports and testimony where, as here, his opinions have gone beyond the scope of his expertise, lacked a proper methodology, or contained insufficient analysis of the facts.

As an example, in *Rieger v. Orlor, Inc.*, in which the plaintiff brought discrimination claims, the court excluded Mr. Kleiner's expert report on the ground that his opinion "does not proffer any specialized knowledge" and invades the province of the jury.  427 F. Supp. 2d 99, 104 (D. Conn. 2006).  Moreover, the court noted that Mr. Kleiner's opinion was based only on facts in the record: "Without more, this is an assessment the jury can make without assistance from an expert."  *Id.*; *see also Carmichael v. Raytheon Co.*, CV 09-3089, at 8 (C.D. Cal. Nov. 4, 2010) (Roman Decl., Exhibit F) (rejecting testimony because Mr. Kleiner's opinions "do not appear to be the product of any particular methodology and tend to invade the province of the jury").

In other cases, courts have excluded Mr. Kleiner's reports and testimony because the court "could not find any evidence of actual analysis except for passing references to 'my analysis' by Dr. Kleiner," *Brown v. West Corp.*, No.

8:11CV284, 2014 WL 1757576, at *2 (D. Neb. May 1, 2014), his report was "conclusory … with no analysis or application of his expertise," *Wagner v. ABW Legacy Corp., Inc.*, No. CV-13-2245-PHX-JZB, 2016 WL 880371, at *8 (D. Ariz. Mar. 8, 2016), and his report lacked reliability in that it "has not been verified by the scientific method" and "lacks the analysis we would expect from such a distinguished academic," *Marting v. Crawford & Co.*, No. 00 C 7132, 2004 WL 305724, at *2-3 (N.D. Ill. Jan. 9, 2004). Indeed, the Ninth Circuit rejected Mr. Kleiner's opinion regarding a California Institute of Technology investigation into a harassment allegation, finding that there was "no evidence" that "his expertise in human resource management encompasses a determination of the proper credibility or weight to be given to the statements of individual witnesses in a harassment investigation." *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1178 n.23 (9th Cir. 2003).

Similarly, here, Mr. Kleiner's apparent expertise in human resources management does not qualify him to opine on whether Thomson Reuters is a consumer reporting agency that issues consumer reports—topics on which he has no expertise, knowledge, education, experience, or training.

## II.  MR. KLEINER'S OPINIONS ARE NOT RELEVANT OR RELIABLE.

Even if the Court were to find Mr. Kleiner qualified to testify concerning issues relating to FCRA, his report and testimony should be excluded because they

are not relevant or reliable, as required by Rule 702 and *Daubert*, and so will not assist the Court in resolving the issues presented in Thomson Reuters's summary judgment motion.  Expert testimony is relevant only if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002) (citation, brackets, and internal quotation marks omitted), and is reliable only if the expert has "specialized knowledge" and the expert's opinion is grounded in "sufficient facts or data," is the "product of reliable principles and methods," and has been "reliably applied" to the facts of the case, Fed. R. Evid. 702.  In other words, a court should determine whether the testimony "'fits' the facts of the case," *Koppell v. New York State Bd. of Elections*, 97 F. Supp. 2d 477, 480 (S.D.N.Y. 2000) (quoting *Daubert*, 509 U.S. at 591-92), and whether the proffered testimony "has a sufficiently 'reliable foundation' to permit it to be considered," *Amorgianos*, 303 F.3d at 265 (citation omitted).

Here, none of the three opinions proffered by Mr. Kleiner fits the facts of this case or is based on a reliable foundation.  Specifically, Mr. Kleiner's report identifies three opinions:

- **OPINION 1**:  CLEAR reports contain far more information on consumer job applicants tha[n] is needed merely to establish identity.  Any of the following items is an [sic]

9

document for establishing <u>identity</u> [followed by list of documents].

- **OPINION 2**:  The customary purpose for organizations to desire a criminal records check such as a CLEAR report to be conducted of a job applicant is to identify if that person could be an inappropriate risk to others if hired.  It is intended to be a check of that person's <u>background</u>, not identity.

- **OPINION 3**:  It was not an aberration for the Georgia Department of Public Health to use the information on CLEAR, including Docket information, in making employment eligibility decisions about a prospective candidate as they did with Ms. Kidd.  (KIDD000026-KIDD000030).  I would expect nearly all organizations to do so if they have already purchased the use of CLEAR for other purposes simply because it costs them nothing further to do so.  I also would expect organizations to purchase the CLEAR service simply for the purpose of doing criminal background checks for eligibility purposes of prospective candidates for employment.  This is because of various needs and desires of employers on the one hand and the excellence of the product in assisting employers [to] make employment eligibility decisions regarding the criminal background of prospective candidates for employment on the other.

Kleiner Expert Report at 7-10 (Roman Decl. Exh. B) (emphases in original).

### A.  Mr. Kleiner's First Opinion Merely States a Fact and is Neither Relevant or Reliable.

Mr. Kleiner's first opinion—that "CLEAR reports contain far more information on consumer job applicants tha[n] is needed merely to establish identity"—exhibits no understanding of CLEAR or its uses.  The only basis provided for the opinion is an outdated Form I-9, from 1991, which lists

documents that may be used to establish identity for employment purposes.[5]  As

shown by Thomson Reuters's motion for summary judgment and supporting

evidence, however, CLEAR is not intended to establish identity of "consumer job

applicants," but rather for such purposes as law enforcement, corporate due

diligence, fraud investigations, and asset location.  Therefore, it is natural—indeed,

necessary—that CLEAR contain information beyond what is needed merely to

establish identity.

Faced with this flaw in his reasoning, Mr. Kleiner admits that his first

opinion merely states a fact that may or may not be relevant to the case:

> Q:  So your first opinion is really just a fact, which is that
> CLEAR contains more information than necessary to
> establish identity, correct?
>
> A:  Right.  In the employment arena.  Right.
>
> Q:  And you're not making any — you have no opinion
> as to the extent of the relevance of that opinion or fact for
> this case; correct?
>
> A:  Correct, I will not make an argument as to its
> relevance in this case.

Kleiner Dep. at 100:19-101:3.

---

[5] The 1991 version of Form I-9 is Exhibit G to the Roman Declaration.

**B.    Mr. Kleiner's Second Opinion Lacks a Reliable Foundation and Speculates on Issues Not Relevant to this Litigation.**

Mr. Kleiner's second opinion—that the "customary purpose for organizations to desire a criminal records check such as a CLEAR report" is to determine if a job applicant "could be an inappropriate risk to others if hired"—is no more relevant to the inquiry required in Phase I of this case, which concerns the intent and regular practices of Thomson Reuters, not any other organization.  The reason why *any* organization would conduct a criminal records check has no relevance to whether Thomson Reuters specifically is a consumer reporting agency that issues consumer reports as defined by FCRA.

In any event, this second opinion is not grounded in fact or data, is not supported by reliable principles or methodology, and has not been tested or subjected to peer review.  Although claiming that the "customary purpose" for using CLEAR is to conduct a "criminal records check," Mr. Kleiner does not know how many or how often organizations use CLEAR to perform such checks on job applicants.  *Id.* at 104:13-105:5.[6]  Plaintiff nevertheless cites Mr. Kleiner's opinion

---

[6] The only basis provided for this opinion is a textbook titled *Human Resource Management*, the cited pages of which make no mention of CLEAR.  *See* Roman Decl., Exh. H.  The textbook does not even say what Mr. Kleiner claims it says— that a "customary purpose" of background checks is to determine if a person would be a "risk to others."  Rather, it makes only the unremarkable observation that reference and background checks are used "to discover new information on the history or past performance of the candidate, such as relevant criminal convictions (continued…)

for the proposition that the Georgia Department of Public Health's use of the

CLEAR report with regard to Plaintiff "was completely in line with what

employers do with CLEAR reports," Pl.'s Mem. Law Supp. Pl.'s Opp'n Def.'s

Mot. Summ. J. (Doc. 56), at 10, while also ignoring Mr. Kleiner's deposition

testimony demonstrating that no facts support his opinion that others use CLEAR

reports for employment eligibility purposes:

> Q: Can you identify any organization other than the
> Georgia Department of Public Health that has used
> CLEAR to perform criminal background checks on a job
> applicant?
>
> A: I do not know of specific individual entities who have
> used it for that purpose.
>
> Q: You can't name one.
>
> A: No.

Kleiner Dep. at 104:23-105:5.

Not only is Mr. Kleiner unaware of any other entity that used CLEAR for

employment eligibility purposes, he cannot draw on his own experience. Although

Mr. Kleiner conducted background checks while on the personnel committee at his

university, he never used any services to check criminal records. *Id.* at 32:23-

33:14. Nor did Mr. Kleiner conduct background checks during his experience as a

"human resource manager for Ford Motor Company," *see* Roman Decl. Exh. B, at

---

or reasons for leaving a previous job." Cynthia D. Fisher, et al., *Human Resource
Management* 348-49 (6th ed. 2006).

1, which, although highlighted in his website profiles (*see* Roman Decl., Exh. D), was in fact only a three-month position reviewing employee suggestions during his senior year of college, *id.* at 14:19-15:12.

### C.     Mr. Kleiner's Third Opinion Contradicts Record Evidence, Has No Factual Basis, and Lacks Relevance.

Similarly, Mr. Kleiner has no basis for the assertion in his third opinion that he would expect "nearly all organizations" that have purchased CLEAR to use it to make employment eligibility decisions.  Although Mr. Kleiner at his deposition modified that opinion to say that "a very significant percentage" of organizations that have purchased CLEAR use it to make employment decisions, he acknowledged that even this reduced estimate is only a "guess."[7]   Kleiner Dep. at 111:6-11.  Mr. Kleiner does not know how many times CLEAR has been used or misused or how many organizations use CLEAR.  *Id.* at 111:25-112:5.

Asked if it would be important to know the percentage of CLEAR subscribers that misuse the product to support his claim that "nearly all" or even "a very significant percentage" of organizations use CLEAR for purposes regulated by FCRA, he admitted that it would be important, but said that "in the absence of the fact that we cannot know, then the next best step is to infer on a reasonable

---

[7] "[E]xpert opinions are inadmissible if based on speculative assumptions."  *Israel v. Spring Indus., Inc.*, No. 98CV5106ENVRML, 2006 WL 3196956, at *2 (E.D.N.Y. Nov. 3, 2006) (citations omitted).

basis." *Id.* at 112:6-16.  That is not proper expert analysis:  "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Amorgianos*, 303 F.3d at 266.

Although Mr. Kleiner's third opinion states that he "would expect organizations to purchase the CLEAR service simply for the purpose of doing criminal background checks for eligibility purposes of prospective candidates for employment," he cannot name a single organization that has purchased CLEAR for the sole purpose of conducting criminal background checks for employment decisions.  Kleiner Dep. at 133:11-15.  In fact, as Mr. Kleiner acknowledged, the CLEAR marketing materials, subscriber agreement, terms and conditions, subscriber certification form, and warnings all state that the product may *not* be used as a factor in establishing a consumer's eligibility for employment and that the user agrees not to use it for such purpose.[8]

Ironically, Mr. Kleiner cites more than a dozen of these documents as bases for his opinion, including Exhibit Nos. 26-37 and 43—even though they are contrary to his opinion and warn that "usage you absolutely must avoid" includes

---

[8] *See id.* at 109:16-111:5; 116:12-118:8; 120:9-121:14; 122:17-123:19 & Kleiner Dep. Exh Nos. 26-37 (marketing materials), 38 (subscriber agreement), 39 (terms and conditions), 41 (additional terms and disclaimers), 42 (subscriber certification form), 43 (subscriber information form).  These exhibits are attached to the Roman Declaration as Exhibits E and I.

"personal background checks" for "pre- and post-employment screening."  Kleiner Dep. Exh. 43.  Mr. Kleiner further agreed, contrary to Plaintiff's characterization of his opinions (Pl.'s Mem. Law Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. (Doc. 56), at 10 n.2), that at least some of the disclaimers in Thomson Reuters's marketing materials and subscriber agreement are prominently placed, are "clear and unequivocal," and can be understood by a layperson.  Kleiner Dep. at 78:3-7, 122:17-123:19 & 153:10-20.

In sum, Mr. Kleiner's opinions and report lack any reliable methodology or support.  Other courts have excluded his testimony for the same reasons, *supra*, Part I, and the same result is warranted here.

## <u>CONCLUSION</u>

For the foregoing reasons, the expert report and testimony of Brian H. Kleiner should be excluded.

December 23, 2016                    Respectfully submitted,

                                    COVINGTON & BURLING LLP


                          BY:      _/s/ Neil K. Roman_____

Eric C. Bosset                      Neil K. Roman
One CityCenter                      The New York Times Building
850 Tenth Street NW                 620 Eighth Avenue
Washington, D.C. 20001              New York, New York 10018
Tel: (202) 662-6000                 Tel: (212) 841-1000
ebosset@cov.com                     nroman@cov.com

                                    *Attorneys for Defendant Thomson*
                                    *Reuters Corporation*

17